IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JAMIE SPEAKS                .                                                              PLAINTIFF

      V.                         Civil No. 2:20-cv-02031-PKH-MEF

ANDREW M. SAUL, Commissioner,
Social Security Administration                                                      DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jamie Speaks, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

### I.     Procedural Background

Plaintiff filed his application for DIB on July 18, 2017, alleging disability since February 1, 2017, due to an irreparable rotator cuff tear in his right shoulder. (ECF No. 18-3, pp. 4; ECF No. 18-5, pp. 2-5; ECF No. 18-6, pp. 6, 13-14, 49-50). An administrative hearing was held on September 19, 2018. (ECF No. 18-2, pp. 26-58). Plaintiff was present and represented by counsel.

Born in 1969, Plaintiff possessed a high school education with some mechanical training. (*Id*. at 19, 32, 146, 189). Although he had past relevant work experience as a maintenance mechanic and exterminator, he performed no substantial gainful activity after his alleged onset date. (*Id*. at 15; ECF No. 18-6, p. 7, 25-32).

On February 11, 2019, the ALJ found Plaintiff's right shoulder impairment to be severe. (ECF No. 18-2, p. 14). He concluded Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 15). Further, he was able to perform a full range of light work, with limited overhead reaching and occasional fingering, grasping, or fine manipulation with his dominant right hand. With the assistance of a vocational expert, the ALJ determined the Plaintiff could perform work as a furniture rental clerk (DOT 295.357-018); usher (DOT 344.677-014); and photo counter clerk (DOT 249.366- 010). (*Id*. at 19).

Both parties have now filed appeal briefs. (ECF Nos. 23, 24). Without leave of Court, Plaintiff has also filed a reply to the Defendant's Appeal Brief. (ECF. No. 25). The matter is ready for Report and Recommendation.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record to support a contrary outcome, or because the Court would decide the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and prevents him

from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity ("RFC"). *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ's reliance upon his own lay interpretation of the evidence constitutes reversible error, and (2) whether the ALJ's step five determination is supported by substantial evidence. After a thorough review of the record, the undersigned finds that remand is necessary to allow the ALJ to further consider Plaintiff's right shoulder impairment and the impact it has on his ability to perform work-related tasks.

Plaintiff injured his right shoulder at work on September 14, 2016, while working in maintenance for Simmons Foods. (ECF No. 18-2, pp. 38-39; ECF No. 18-7, p. 15). On January 3, 2017, Dr. Stephen Heim performed acromioplasty of the right shoulder with clavicular resection due to diagnoses of a large supraspinatus and infraspinatus rotator cuff tear, severe impingement syndrome of the acromion on the humeral head, and acromioclavicular arthritis. (ECF No. 18-7, pp. 5-14). He was unable to completely repair the rotator cuff, however, because the tendon had retracted to the neck and the rim of the glenoid.

Initially, Plaintiff's post-operative convalescence went well. (*Id*. at 17-18). His pain improved and his wound healed. Unfortunately, Dr. Heim explained he would never regain normal motion or strength in the right arm. Acknowledging Plaintiff was a mechanic, Dr. Heim opined he would not be able to do everything he wished or wanted to do in every position. Rather than assess any restrictions, however, Dr. Heim opted to wait and see how much function Plaintiff was able to regain through therapy. And, on January 29, 2017, Plaintiff began physical therapy. (*Id*. at 15). He tolerated the evaluation and treatment well, and the therapist assessed good rehabilitation potential. Plaintiff was also instructed regarding a home exercise program.

Records dated February 7, 2017, indicate Plaintiff was doing very well, considering he continued to exhibit a global tear of the right rotator cuff. (*Id*. at. 22-23). His strength and pain had improved, but Dr. Heim again noted he would never regain full strength because his rotator cuff tear was irreparable. At this time, he released Plaintiff to be seen on an as needed basis. He noted that the Plaintiff continued to perform his home exercises.

Plaintiff returned on April 5, 2017, complaining of persistent right shoulder pain, which he rated as a 9 on a 10-point scale. (*Id*. at 19-21). Reporting "some" response to treatment, he wanted to discuss his treatment options. Dr. Heim noted that his current medications included Paxil,

Meloxicam, and Norco. He also opined that Plaintiff had a 26% impairment to the body as whole and a 43% impairment to the upper extremity due to decreased strength in the upper extremity resulting from a complete rotator cuff tear. He then refilled Plaintiff's pain medications.

On August 15, 2017, Plaintiff completed an adult function report, indicating he could care for his personal hygiene with limitations related to range of motion in the right shoulder, walk, drive (distance restricted), count change, handle a savings account/checkbook/money orders, listen to music, watch television, collect items, sit outside and watch the hummingbirds feed, and spend time with others daily. (ECF No. 18-6, pp. 17-24). However, he indicated that he could not lift, use his hands, reach, bend, stand, walk, knee, squat, sit, or complete tasks. On October 20, 2017, Plaintiff completed a second function report, indicating that he could go out alone and shop in stores for necessities for no longer than one hour. (*Id*. at 41-48). He also indicated that shaking and tremors interfered with his ability to grip and use his hands and reported some difficulty following spoken instructions. Further, Plaintiff admitted that he uses the sling prescribed following his surgery to help alleviate his pain.

In additional documents completed for the Administration, Plaintiff indicated that his condition deteriorated further in August 2017, when he began experiencing more violent convulsions, shaking, pain, and anxiety. (*Id.* at 36). Additionally, beginning in October 2017, Plaintiff claims to have lost function in his left arm due to over-compensation for his injured right shoulder. (*Id*. at 58). He also reported tremors in his left shoulder, arm, hands, and fingers, as well as severe cramps in his hands and fingers.

On September 14, 2017, non-examining state agency consultant, Dr. Karmen Hopkins, reviewed the medical records in evidence and concluded Plaintiff could perform light work with limited use of his right upper extremity and only occasional pushing and pulling with his right

upper extremity. (ECF No. 18-3, pp. 9-10). He opined that Plaintiff's ability to handle, finger, and feel was unlimited.

On November 2, 2017, non-examining state agency consultant, Dr. Bill Payne, reviewed the record and concluded Plaintiff could perform light work with limited overhead reaching and only occasional pushing and pulling with his right upper extremity. (*Id*. at 21-23). He agreed that Plaintiff had no limitations in his ability to ability to handle, finger, and feel.

On August 9, 2018, Plaintiff reported a six-month history of shoulder pain both at rest and range of motion. (ECF No. 18-7, pp. 31-34). He could only abduct his shoulder to about 40 degrees (normal abduction is approximately 150 degrees), and he had some limitation with forward flexion. Plaintiff had also lost strength in the extremity. An x-ray of the shoulder revealed osteoarthritis of the AC joint. Dr. Heim diagnosed pain in the right shoulder joint and prescribed Norco. He also recommended right shoulder arthroplasty (total shoulder replacement).

On October 29, 2018, Plaintiff attended a consultative orthopedic evaluation with Dr. Ted Honghiran. (*Id*. at 82-85). Plaintiff's daughter drove him to the appointment. He reported an inability to work for the past 20 months, due to pain in the right shoulder resulting from the torn rotator cuff. Since his surgery, Plaintiff indicated that his right hand was shaky, especially when he tried to use it. On exam, Dr. Honghiran documented a severely limited range of motion in the right shoulder with pain. His abduction was only to 45 degrees with weakness. Plaintiff's internal and external rotation and forward flexion were also limited, and he tended to keep his right arm down to his side. X-rays showed good alignment with some bone spurs around the shoulder joint, possibly from the previous surgery. Dr. Honghiran opined that Plaintiff's shoulder was "basically non-functioning" due to his inability to abduct or move the arm away from the body. He indicated

Plaintiff would "basically" need a light duty job and training to do a job one-handed, as he would have a hard time doing mechanical work in his present condition.

At the hearing, Plaintiff testified that his gap in treatment following his surgery was due to the termination of his employment with Simmons and the loss of his medical insurance. (ECF No. 18-2, p. 44). He was initially awarded Medicaid coverage, but the coverage was later rescinded. (*Id*. at 44-45). Plaintiff stated that he is still actively pursuing his Medicaid coverage. According to his testimony, however, it was during the period of coverage that he followed-up with Dr. Heim. (*Id*. at 46). And, at that time, Dr. Heim reportedly wanted to refer him to a specialist in Fayetteville for a total shoulder replacement. This referral, however, was placed on hold until 2019.

Notwithstanding Dr. Honghiran's opinion that Plaintiff's right shoulder was "basically non-functioning" and that he would need training to perform a job that allows him to use only one hand, the ALJ failed to request an RFC assessment from Plaintiff's treating orthopedist. He also failed to recontact Dr. Honghiran for further explanation of his opinion. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (emphasis omitted) (quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (duty to seek clarification from treating physician "arises only if a crucial issue is undeveloped")); *see also Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (duty to seek clarification from treating physician "arises only if a crucial issue is undeveloped"). Instead, he concluded Plaintiff could perform light work with no overhead reaching and only occasional fingering, grasping, or fine manipulation with the right hand. (ECF No. 18-2, p. 15).

Unfortunately, it is not clear that the ALJ's RFC determination accounts for all the limitations resulting from Plaintiff's shoulder impairment. The record makes clear that Plaintiff's injury is irreparable, and despite participating in both physical therapy and a home exercise

program, his condition deteriorated. Even the Commissioner's own doctors concluded Plaintiff's ability to use his right upper extremity for pushing and pulling was limited.

Accordingly, it is clear to the undersigned that Dr. Honghiran's assessment calls into question Plaintiff's ability to occasionally use the right hand for fingering, grasping, and/or fine manipulation. There is also a question concerning the Plaintiff's ability to lift, carry, push, and pull with the right upper extremity. Therefore, given the nature of the Plaintiff's injury and the fact that the evidence of record provides support for Dr. Honghiran's assessment, I find that remand is necessary to allow the ALJ to reconsider Dr. Honghiran's assessment, recontact Dr. Honghiran for clarification of his comment that Plaintiff's right shoulder was "basically non-functioning"; request a detailed RFC assessment from Dr. Honghiran, to include a full assessment of the Plaintiff's ability to use his right upper extremity to lift, carry, handle, finger, grip, push, and pull; and, to obtain an RFC assessment from Plaintiff's treating orthopedist, Dr. Stephen Heim.

### IV.   Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of February 2021.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE